

**Signed and Filed: January 09, 2006**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GEORGE QUINN CHEN,<br><br>       Debtor. | Case No. 03-32157<br>Chapter 7 |

**MEMORANDUM DECISION REGARDING OBJECTIONS
TO FIRST INTERIM FEE APPLICATION OF
CHAPTER 7 TRUSTEE'S ATTORNEYS**

On November 21, 2005, the court issued its Interim Order Regarding Application of Goldberg, Stinnett, Meyers & Davis, APC for Allowance and Payment of Interim Compensation and Reimbursement of Expenses as Counsel for Chapter 11 Trustee, for the Period From August 27, 2003 to July 15, 2005 (the "Interim Order").[1] The Interim Order awarded Goldberg, Stinnett, Meyers &

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 (incorporating by reference Fed. R. Civ. P. 52(a)). Unless otherwise defined herein, capitalized terms have the meanings provided in the Interim Order or the Interim Application and the papers filed in support and in opposition thereto, and all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat.

-1-

Davis, APC ("Applicant") $225,000.00 out of $350,516.25 in requested fees and all of the $13,088.02 in requested expenses. This Memorandum Decision addresses the balance of $125,516.25 ($350,516.25 - $225,000.00) requested by Applicant and objections to Applicant's requested fees and expenses filed by Debtor, George Quinn Chen ("Debtor") and Terra Nova Industries, Inc. ("Terra Nova").

For the reasons set forth below the court will not approve $94,353.00 of the requested fees, but will allow the remaining $31,163.25 ($125,516.25 - $94,353.00). Applicant will have the opportunity to revisit whether the court should allow some or all of the $94,353.00 in the future if changed circumstances warrant.

I. Debtor's Objection

Debtor objects that approximately $94,000.00 of Applicant's fees have been incurred in litigation in which the estate appears to have foregone a contractual right to seek reimbursement of its attorneys' fees, namely <u>Dux Capital Management Corp. and Davis v. Chen and Schoenmann</u>, A.P. No. 04-3318) (the "Dux litigation"). Debtor argues that by not requesting reimbursement Applicant may have decreased the funds available to pay non-dischargeable claims, thereby harming Debtor.

Debtor's arguments are premised on (a) the estate actually having a contractual right to reimbursement of its attorneys' fees

---

23. The court notes that the Interim Application covers the period prior to July 18, 2005, when the case was converted from Chapter 11 to Chapter 7.

-2-

Case: 03-32157   Doc# 219   Filed: 01/09/06   Entered: 01/10/06 09:54:11   Page 2 of 11

by Dux,[2] (b) the estate ultimately prevailing in the Dux litigation and being able to collect those fees,[3] and (c) Debtor having non-dischargeable debts that could be paid were it not for distributions to Applicant.[4] There is some evidence to support each of these premises.

Applicant replies that Trustee made a strategic decision not to seek recovery of fees in the Dux Litigation because Trustee denied that the estate had "any participation, rights or

---

[2] The contract at issue is a pre-petition settlement agreement between Debtor and the Dux Parties which states (§ 12.7):

> 12.7 <u>Expenses</u>. The prevailing party as to any disputes relating to this Agreement shall be entitled to recover from the unsuccessful party to this Agreement all costs, expenses and actual attorneys' fees relating to the enforcement or interpretation of, or any litigation or arbitration relating to, this Agreement. Any judgment or order entered in such action shall contain a specific provisions providing for the recovery of attorneys' fees and costs incurred in enforcing such judgment. For purposes of this paragraph, attorneys' fees shall include, without limitation, fees incurred in the following: (1) post judgment motions and appeals; (2) contempt proceedings; (3) garnishment, levee, and debtor and third party examinations; (4) discovery; and (5) bankruptcy litigation.

[3] Debtor points out that the estate has been successful in its litigation with the Dux Parties so far. Various appeals in the Dux Litigation are pending before the Ninth Circuit (Docket Nos. 04-16911, 04-16973, 04-17272, 05-16497).

[4] Two nondischargeability adversary proceedings are pending:
(1) <u>City and County of San Francisco v. Chen</u> (A.P. No. 03-03713). This adversary proceeding has been settled and the settlement agreement has been approved by the court.
(2) <u>Terra Nova Industries, Inc. v. Chen et al.</u> (A.P. No. 03-03712), in which Terra Nova seeks a nondischargeability judgment of over $500,000. A judgment for Debtor entered on July 25, 2005, was appealed by Terra Nova (BAP No. NC-05-1323), and an order denying Debtor's motion for attorneys' fees entered on October 24, 2005, was appealed by Debtor (Dist. Ct. No. 05-4873). The appeals are pending.

-3-

obligations" under the contract at issue, so it would have been "anaomalous at best" for Trustee to claim attorneys' fees under that contract, "at least while the primary dispute with the Dux Parties was ongoing." Applicant adds:

> At a minimum, an effort to collect attorneys' fees from the Dux Parties would have increased the litigation, against litigants that had already demonstrated their appetite for endless battles, and undoubtedly would have multiplied the services for which Applicant would have sought compensation, without any assurance of success. A battle over attorneys' fees, both as to entitlement and as to amount, might still be ongoing today had it been initiated by the Trustee, resulting in a further diminution and delay in the administration of the estate.

The court is not persuaded by Applicant's reasons for not including any prayer for attorneys' fees in its answer in the Dux Litigation. It is true that ultimately the estate might not prevail in that litigation, so it might not be entitled to recover fees, but an unknown probability of recovery is better than none at all. For sure, Applicant, on behalf of the Trustee has prevailed at two courts so far. It is also true that litigation over attorneys' fees could be expensive and time consuming but the Dux Parties have already sought recovery from the estate using the same attorneys' fee clause, and there is no showing that the estate would incur any significant additional fees by making essentially the same claim back against Dux. Finally, it is true that the estate would have to argue in the alternative -- preserving its right to seek attorneys' fees while at the same time denying that the Dux Parties would have any right to such fees should they prevail in the Dux Litigation -- but there is nothing novel about arguing in the alternative. In short, the

-4-

estate does not appear to have gained anything by not praying for attorneys' fees, and it may have lost such a right by not doing so.

Therefore, it is possible that the estate and Debtor will have been damaged in the amount of whatever attorneys' fees the estate will have to pay Applicant for its work in the Dux Litigation, because otherwise those funds would have been available to pay down nondischargeable debts.  At present the court does not know whether the estate will ultimately prevail in the Dux Litigation and expresses no opinion whether the estate could still recover those fees from Dux on some theory, as Applicants' papers imply.  In other words, there are still some uncertainties.  Nevertheless, to preserve Debtor's rights the court will not at present allow the fees attributable to the Dux Litigation.  Those fees appear to be the $94,353.00 listed on page 18, line 16.5 of the Interim Application.  Deducting this from the $125,516.25 balance of fees sought in the Interim Application leaves a balance of $31,163.25 ($125,516.25 - $94,353.00).

II. <u>Tera Nova Objections</u>

Terra Nova requests that the court order Applicant to pay for an audit of its billings by an outside auditing firm.  The court has had the benefit of the parties' thorough written and oral presentations of facts and arguments and does not believe such an audit is warranted.  That request will be denied.  Terra Nova's particular objections are as follows:

A. <u>Travel</u>

Terra Nova objects to 1.7 hours of billed time for an attorney to travel from San Francisco to Sausalito and back to

attend a PWI shareholder meeting. Terra Nova questions the amount of time but not the necessity of the travel. Applicant replies that 51 minutes each way is not unreasonable when considering driving time, walking from a parking garage, unknown delays, and that the travel time was charged at 50% of normal rates. The court agrees.

Terra Nova objects to 9 hours of billed time for "Travel to Taipei, Taiwan (partial)" on June 18, 2004, and another 9 hours of billed time for "Travel from Taipei, Taiwan (partial)" on June 24, 2004, for Applicant to take two depositions. Again, Terra Nova questions only the amount of time and not the necessity of the travel. Applicant replies that (a) it has again billed this time at 50% of its normal rates, (b) the actual travel time was more than 9 hours because "travel to Taipei, with a lay-over in Tokyo and with waiting time at each airport, requires nearly twice that amount of time," and (c) the cost to the estate has been effectively reduced by $10,000 that Rextron paid as a sanction -- i.e., if the court applies the first $7,509.94 of this $10,000 sanction to cover all of Applicant's travel costs then the $2,490.06 balance can be applied to $4,275.00 in fees that Applicant billed for these 18 hours of travel.

Section III.J of The court's posted Practices and Procedures in Judge Montali's Court (Rev. 1/30/04) state:

> **Travel:** Judge Montali generally will allow up to two hours of compensation for non-working airplane travel time, to account for inevitable delays for security and administration involved in air travel. Other air travel time is not likely to be compensable, per Guideline 17 of the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees.

-6-

The referenced Guidelines state:

> 17. **Airplane Travel Time** - Airplane travel time is not compensable, but work actually done during a flight is compensable. If significant travel time is expected in a case, specific guidelines should be obtained for that case.

The court recognizes that in theory a layover might increase the presumed two hours allotted for unavoidable non-working time, but at the hearing on November 10, 2005, the court questioned Applicant about whether a direct flight might have been more efficient.

That said, the court also recognizes that even a direct flight to Taipei takes many hours and that the exhaustion of such long distance travel can result in more unavoidable non-working time for which attorneys should be compensated. Regardless of the possibility of reducing those costs somewhat, they were advanced to Applicant by Rextron and thus the estate and Debtor are not affected by their allowance.

In addition, as Applicant points out, it has voluntarily reduced its fees by $30,000 on top of its normal elimination of charges in its billing discretion. For these reasons the court is not convinced that any further fees should be deducted for this non-working travel time.

B. <u>Efficiency</u>

Terra Nova objects to Applicant's time spent on conferences, intra-office communications, the use of two attorneys at the same hearing or conference, and what it asserts are inadequate descriptions of large blocks of time, duplicate entries, and administrative or paraprofessional tasks performed by attorneys. Terra Nova states that the work performed by Applicant "did not

-7-

require any significant evidentiary hearings" and that Applicant "billed over 44 hours to oppose a routine motion to intervene filed by Dux Capital." In support of these objections Terra Nova provides an exemplary appendix setting forth each time entry to which it objects with coded objections. Applicant's reply papers set forth a thorough response.

First, the court agrees with Applicant that this has been a very complex case involving numerous parties and hard-fought litigation on multiple fronts, including a motion to intervene that was anything but routine. Second, the court has carefully reviewed the time entries and is satisfied that it would have been inefficient in a case of this complexity for Applicant <u>not</u> to have had a certain level of conferences, intra-office communications, and attendance by two attorneys at the same hearing or conference, and that Applicant has exercised adequate billing judgment in these matters. Among other things, for most intra-office communications only the lower-rate attorney's time is billed and, as one would expect, most of the intra-office conferences after the start of the case were brief.

The court is less persuaded by Applicant's explanations for having attorneys perform some administrative tasks. It should be part of attorneys' non-billable continuing legal education to be generally familiar with the local rules and part of a law firm's overhead to train administrative staff to e-file documents and present documents for filing under seal. Recognizing that drafting an application to file documents under seal may take considerable attorney time, it still should take no more than a minimal amount of time to explain to support staff how to submit

-8-

that application and sealed documents to the court, nor should it take much time to e-file documents. Applying these principles some time entries are either excessive or inadequately described -- e.g., 0.4 hours to e-file a document in the Schoenmann v. Yageo matter on April 14, 2005; 0.9 hours to e-file two documents in the Yageo/Rextron Settlement matter on June 21 and 22, 2005; and an unspecified amount of time to review local rules and e-file documents, clumped with preparing an ex parte motion to file documents under seal in the PWI Stock Sale matter on September 20 through 22, 2004. Nevertheless, the court is persuaded that Applicant's administrative tasks do not amount to much time and are covered many times over by Applicant's voluntary $30,000 reduction.

The court has also carefully reviewed the allegedly duplicate entries and inadequate descriptions of large blocks of time. The court is persuaded that the time entries are not duplicative but instead represent multiple days of work on complex matters. The court also believes that although fee applications should include detailed overviews of the work performed and daily time records, and although Applicant could have provided more detail in some of its daily time records, nevertheless too much detail would be inefficient and the court and the major players are thoroughly familiar with the complex issues in this case. If Terra Nova had any doubt about the complexity of the issues or the amount of work required it could have reviewed the court's files, which contain pleadings that thoroughly describe all of the issues, most of which are not only accessible to the public but are also readily available online.

-9-

For the foregoing reasons the court will not further reduce Applicant's fees on account of Terra Nova's objections.

III. Conclusion

Applicant should submit an order allowing an additional $31,163.25 of the fees requested in its Interim Application and deferring any allowance of the $94,353.00 balance, all for the reasons stated in this Memorandum Decision. The order should also direct Applicant to segregate fees attributable to the Dux Litigation in its future fee applications and note in those applications that such fees are not presently allowable under this Memorandum Decision. Applicant should comply with B.L.R. 9021-1.

* END OF MEMORANDUM DECISION *

<u>COURT SERVICE LIST</u>

Merle C. Meyers, Esq.
Goldberg, Stinnett, Meyers & Davis, APC
44 Montgomery Street, Suite 2900
San Francisco, CA 94104

Iain A. Macdonald, Esq.
Macdonald & Associates
Two Embarcadero Center, Suite 1670
San Francisco, CA 94111-3930

Cheryl C. Rouse, Esq.
Law Offices of Rouse & Bahlert
345 Franklin Street
San Francisco, CA 94102

Phillip A Jaret, Esq.
Jaret & Jaret
900 Fifth Avenue, Suite 201
San Rafael, CA 94901